IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CORY MARSHALL,<br><br>                     Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>                     Defendant. | 8:23CV129<br><br>**MEMORANDUM AND ORDER** |

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). Filing No. 1. Plaintiff files a motion for summary judgment, Filing No. 14, and defendant has filed a motion to affirm, Filing No.19. This Court has jurisdiction to review this matter under 42 U.S.C. § 405(g).

## BACKGROUND

### I. Procedural History

Plaintiff filed an application for Title II benefits disability benefits on May 18, 2020, alleging he suffered from a disability that began on July 1, 2019, due to migraine headaches, HIV, bipolar disorder, depressive disorder. Filing No. 9-2 at 13, 16. His application was initially denied and on reconsideration, he was granted a telephonic hearing before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ issued an unfavorable decision. The Appeals Council denied review, making the ALJ's decision the final agency decision.

### II. Hearing Testimony and Related Evidence

Plaintiff was born in 1987. He has at least a high school education, and his past relevant work is as a customer service representative and tech support. The

Administrative Law Judge (ALJ) considered the above impairments to be severe. Filing No. 9-2 at 16. The ALJ considered the plaintiff's arthralgia; chronic sinusitis; attention deficit disorder (ADHD); anxiety; posttraumatic stress disorder (PTSD); and insomnia, to be medically determinable non-severe impairments. Filing No. 9-2 at 17.

Plaintiff testified that his severe migraine headaches effect his daily living. He is unable to clean the house or walk his dogs on a regular basis and is unable to care and dress or bathe himself or cook a meal when he is having a migraine. He stated that he was unable to sleep, read or work during a headache spell. During college, he had to take time off for a year and live with his parents due to his migraines.

### III. Medical evidence

The plaintiff submits the following medical evidence:

1) On September 12, 2019, the Plaintiff presented to the emergency room with complaints of numbness and dizziness, as well as frequent headaches for the past month. He stated the headaches were associated with photophobia and nausea. He also stated he had been missing work due to headaches.

2) On October 2, 2019, the Plaintiff presented to his neurologist, Dr. Mudugal, complaining his headaches increased the past two months. He described an aura of lightheadedness, associated with nausea, photophobia, and phonophobia. He stated the headaches were worse with activity or seeing computers for too long, that they occurred three to four times per week, and lasted all day.

3) On October 24, 2019, the Plaintiff saw his physician, Dr. McMinn, with complaints of migraines for two to three days. In fact, in his notes, Dr. McMinn noted that the Plaintiff was sitting in an exam room in total darkness when he walked in.

4) On November 9, 2019, the Plaintiff visited his neurologist once again with a similar description of headaches as before.  During this visit, the Plaintiff reported side effects to his medication.

5) On June 16, 2020, the Plaintiff presented to the emergency room with complaints of a headache.

6) On July 20, 2020, the Plaintiff once again presented to the emergency room with complaints of a headache.

7) On August 24, 2020, the Plaintiff visited his neurologist and complained of increased migraines over the past few months.

8) On August 29, 2020, the Plaintiff presented to the emergency room again with complaints of a headache.

9) On December 15, 2021, the Plaintiff presented to his physician, Dr. Giakoumatos, with complaints of daily migraines and headaches.

10) On February 27, 2022, the Plaintiff presented to the emergency room with complaints of a headache.

11) On March 3, 2022, the Plaintiff once again presented to the emergency room by EMS with complaints of a migraine.

Filing No. 15 at 5–6, Plaintiff's brief.  The government generally agrees with these facts, and adds the following:

12) A September 12, 2019, CT scan of Plaintiff's head showed no acute intracranial findings.

13) On October 2, 2019, Plaintiff complained of headaches, and an examination showed he was in no apparent distress; he was awake, alert, and attentive; he had

no atrophy with normal muscle tone and full 5/5 strength; and his reflexes, coordination, sensation, and gait were normal.

14) When Plaintiff sought treatment for migraines on October 24, 2019, he was sitting in the examination room in total darkness, his mental status was appropriate, and he was in no acute distress.

15) On November 7, 2019, Plaintiff's MRI angiogram of the brain was normal, and his brain MRI showed no acute intracranial findings, with nonspecific mild heterogenous calvarial marrow signal.  His examination was unremarkable.

16) When Plaintiff sought treatment for vomiting and a cough on February 28, 2020, his "Review for Symptoms" was negative for headaches.

17) When Plaintiff went to the emergency room for body pain and a headache on June 16, 2020, he reported that amitriptyline and Advil "completely resolved his migraine," though he was concerned it would return.  His examination was generally unremarkable.

18) On August 24, 2020, Plaintiff told a provider that he started Trazadone for insomnia about three weeks ago and this "tremendously has helped the headaches".  He reported having only 1-2 migraines since starting Trazadone.  Plaintiff's examination was generally unremarkable.

19) When Plaintiff went to the emergency room on August 29, 2020, complaining of a migraine, he explained that he could not afford the new medication that was prescribed by his neurologist.

20) In a September 2, 2020, Function Report, Plaintiff reported no side effects from Trazadone.

21) On September 23, 2020, Plaintiff went to the emergency room complaining of right eye pain that was typical prior to the onset of a migraine. He reported "no headache at this time", and his eye pain resolved with an injection.

22) In a February 24, 2021, Disability Report-Appeals, Plaintiff reported no side effects from Aimovig and Trazadone.

23) When seen for chest pain on March 18, 2021, Plaintiff's "Review of Symptoms" was negative for headaches.

24) At an April 1, 2021, annual examination, Plaintiff reported that he was "overall doing well," his "headaches are much better with Aimovig injections," and he was even considering returning to work, as his headache symptoms had improved. Plaintiff's examination was unremarkable. A provider wrote that Plaintiff's "migraine medication appears to be working".

25) In May and July 2021, Plaintiff denied headaches.

26) On January 26, 2022, a provider wrote that in terms of headaches, Plaintiff had "been doing fairly well for the most part," noting that he had migraines about once per month and that physical therapy improved his stress/tension type headaches. On examination, Plaintiff was alert, awake, and answering questions appropriately, and he had 5/5 strength and unremarkable coordination.

27) On February 27, 2022, Plaintiff went to the emergency room for a migraine, and his symptoms completely resolved after being given a migraine cocktail.

28) Plaintiff returned to the emergency room on March 3, 2022, for a reported migraine, and his symptoms resolved with medication. An examination showed muscular tenderness, but no neurological deficits or neck rigidity, and he was otherwise hemodynamically stable.

Filing No. 20 at 2–4, Brief of Commissioner.

## LAW

Review by this Court is limited to an inquiry into whether there is substantial evidence on the record to support the findings of the ALJ and whether the ALJ applied the correct legal standards. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004) (quoting *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)). Rather, the District Court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Perkins*, 648 F.3d at 897.

In determining whether the evidence in the record as a whole is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). Under this standard, substantial evidence means something "less than a preponderance" of the evidence. *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Perkins*, 648 F.3d at 897.

The Social Security Administration has promulgated a sequential process to determine whether a claimant qualifies for disability benefits. See 20 C.F.R. § 404.1520(a)(4). The determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's residual

functional capacity and his or her age, education, and work experience. *Id.* At step one, the claimant has the burden to establish that he or she has not engaged in substantial gainful activity since his or her alleged disability onset date. *Cuthrell v. Astrue,* 702 F.3d 1114, 1116 (8th Cir. 2013). At step two, the claimant has the burden to prove he or she has a medically determinable physical or mental impairment or combination of impairments that significantly limits his or her physical or mental ability to perform basic work activities. *Id.* At step three, if the claimant shows that his or her impairment meets or equals a presumptively disabling impairment listed in the regulations, he or she is automatically found disabled and is entitled to benefits. *Id.*

If the claimant does not meet the listings, the ALJ determines the claimant's RFC, which the ALJ uses at steps four and five. 20 C.F.R. § 404.1520(a)(4). At step four, the claimant has the burden to prove he or she lacks the RFC to perform his or her past relevant work. *Cuthrell,* 702 F.3d at 1116. If the claimant can still do his or her past relevant work, he or she will be found not disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy the claimant can perform. *Id.; see Jones v. Astrue,* 619 F.3d 963, 971 (8th Cir. 2010).

A claimant's RFC is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin,* 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545. RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, meaning 8 hours a day, for 5 days a week, or an equivalent work schedule. *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims,* SSR 96-8P (S.S.A. July 2, 1996). The Eighth Circuit often expresses "skepticism about the probative value of

7

evidence of day-to-day activities," and finds it "necessary from time to time" to remind the Commissioner "that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Reed v. Barnhart*, 399 F.3d 917, 923–24 (8th Cir. 2005) (quoting *Thomas v. Sullivan*, 876 F.2d 666, 69 (8th Cir. 1989)). "[T]the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Id.*

The RFC must (1) give appropriate consideration to all of a claimant's impairments; and (2) be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The ALJ is required to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). "To properly determine a claimant's residual functional capacity, an ALJ is therefore 'required to consider at least some supporting evidence from a [medical] professional.'" *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

With respect to claims filed after March 27, 2017, the Social Security Administration has adopted new regulations about the weight afforded to treating physicians' opinions. 20 C.F.R. § 404.1520c; *see Pemberton v. Saul*, 953 F.3d 514, 517 (8th Cir. 2020). Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 404.1520c(a). Instead, ALJs will determine

8

the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. *Id.* ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ is required to view a treating physician's opinion in the context of a claimant's entire medical record. *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019). An ALJ must give "good reasons" for the weight given to a treating physician opinion, irrespective of how much weight is given. *See Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008); *see also Reed*, 399 F.3d at 921.

When evaluating a claimant's credibility as to subjective complaints, the ALJ must consider the *Polaski* factors. *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021); *see Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Those factors include: 'the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.'" *Grindley*, 9 F.4th at 629 (quoting *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010)). "Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Id.* (quoting *Halverson*, 600 F.3d at 931–32). An ALJ may

9

consider a conservative treatment history in discrediting subjective complaints. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

To satisfy the burden to show the claimant is capable of performing other work, the ALJ is generally required to utilize testimony of a vocational expert if the claimant suffers from non-exertional impairments that limit his ability to perform the full range of work described in one of the specific categories set forth in the guidelines. *Jones*, 619 F.3d at 971–972. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(v); see *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (stating that a vocational expert's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies"). "When a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 377 (8th Cir. 2016) (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)).

## DISCUSSION

I. **ALJ**

The administrative law judge conducted a telephonic hearing on June 2, 2022. The ALJ first determined that Plaintiff has severe impairments, including migraine headaches; asymptomatic human immunodeficiency virus (HIV); bipolar disorder; and depressive disorder (20 C.F.R. § 404.1520(c) and 416.920(c)). The medical evidence of record shows that the claimant was assessed with arthralgia in unspecified joints by a rheumatologist in November 2021. Filing No. 10-6 at 52–68. Subsequently, the claimant

was observed to have some decreased range of motion of the cervical spine, along with slightly decreased 4+/5 knee strength and tenderness Filing No. 10-6 at 2–17.

These impairments were determined by the ALJ to be non-severe, as were here symptoms of eponychia, foreign body in the left foot, foreign body in the right foot, contusion of the jaw, nevus lipomatosis, and dermatofibroma. Filing No. 10-5 at 45–101, Filing No. 10-6 at 41–68, Filing No. 10-4 at 125–51. The ALJ also noted that the claimant was additionally assessed with attention deficit hyperactivity disorder (ADHD), anxiety, posttraumatic stress disorder (PTSD), insomnia, and alcohol use disorder, and determined that all of these impairments were minimal with regard to work-based activities. Filing No. 10-1 at 54–76; Filing No. 10-3 at 65–96; Filing No. 10-4 at 2–34; and Filing No. 10-6 at 30–40. Last, the ALJ determined that the Plaintiff has the RFC to perform light work pursuant to 20 C.F.R. § 404.1567(b) and 416.967(b).

With regard to the migraines, the ALJ determined that there is "some limitation, the medical evidence is not consistent with the extent of the symptoms or limitations alleged." ALJ Decision, Filing No. 9-2 at 25. The ALJ stated:

> Based on the foregoing, the medical evidence supports a finding that the claimant should not perform the lifting and carrying required at the medium demand level, in order to prevent exacerbations of migraines and possible symptoms of HIV. Additionally, the combination of the claimant's physical and mental impairments supports a determination that he would have difficulty concentrating on and persisting at more complex and detailed work tasks throughout an entire workday. Accordingly, the claimant is limited to performing only simple work. His mental impairments and resulting symptoms are consistent with the social interaction limitations described in the residual functional capacity. While these limitations are consistent with the medical evidence, the undersigned finds that the medical evidence overall does not support the extent of the disabling symptoms and limitations, for the reasons described above.

Filing No. 9-2 at 29. The ALJ concluded that the Plaintiff could not perform his past relevant work as a customer service representative.

A. *Hypothetical to the Vocational Expert ("VE")*

The ALJ asked the VE:

> For the first hypothetical, assume an individual who could do light work and by
> this, I mean they could lift 20 pounds occasionally, 10 pounds frequently. No restriction in stand, sit, or walk.  Do all of those at least six hours in an eight-hour day.  From a mental or non-exertional standpoint, needs to have simple work.  And social interaction should not be more than occasional with coworkers, supervisors, and the public.  (Tr. 65).
> A:  Yes.

Filing No. 9-2 at 65.

The VE testified that the Plaintiff could not perform his past relevant work as a customer service representative.  The VE testified that Plaintiff could work as a housekeeper, merchandise marker, and routing clerk.

Counsel for the claimant then asked the following question:

> Q:  We have the same light functional capacity but limitation with episodes of deterioration when stress symptoms increase and I'm putting that at 15% of the time, they're going to have some impact in their ability to complete a task because of deterioration from either anxiety or headache related issues that would impact their ability to stay on task throughout the day.   Would that impact their ability to do these jobs you outlined?
> A.   Yes, they would not be able to maintain competitive employment.

*Id.* at 66.

B. *Failure to properly evaluate severe migraine headaches.*

Although a primary headache disorder is not listed as an impairment under SSR 19-4p, the ALJ must analyze whether this disorder equals a listing.  *See* SSR 19-4.  When considering migraine headaches specifically, ALJs should evaluate whether the claimant medically equals the listing found in 20 C.F.R., Part 404, Subpart P, Appendix 1, § 11.02,

12

which is designated for Epilepsy/Seizures.[1]  *See Mann v. Colvin*, 100 F. Supp. 3d 710, 719–720 (N.D. Iowa 2015).  The SSA has identified listings regarding seizures as the most closely analogous listing for severe chronic migraines.  *Id.* at 719 (discussing an example published in POMS DI 24505.015, which is no longer listed in the SSA's POMS, that compared migraines as medically equivalent to former Listing 11.03).  Migraines can be in terms of their severity "at least of equal medical significance to those of a listed impairment."  *See* 20 C.F.R. § 404.1526.

The ALJ must explain why the claimant does not medically equal the relevant listing.  *See Hesseltine v. Colvin*, 800 F.3d 461, 466 (8th Cir. 2015).  The ALJ decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the . . . determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1).  *See Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 823 (8th Cir. 2008) (noting that record's inconsistencies with step-three conclusions, combined with the ALJ's insufficient analysis, warranted remand); *Mann*, 100 F. Supp. 3d at 720–21 (finding sufficient evidence that the claimant's migraines were medically equal in severity to a listed impairment to find ALJ erred by failing to further articulate step three conclusions).

The ALJ stated that he considered 11.02 and concluded:

The medical evidence does not indicate that the claimant has experienced seizures at the frequency required to meet listing 11.02 (*see* Ex. 6F; 25F). Moreover, the record does not contain evidence from a State agency medical or psychological consultant, a medical expert, or a member of the Appeals Council medical support staff that would support a finding of medical equivalence, as required by SSR 17-2p.  Accordingly, the undersigned finds that the claimant's migraine impairment does not meet or equal a listing.

---

[1] Listing 11.02(B) provides: "Dyscognitive seizures [here: migraines] occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P. Appx. 1 § 11.02(B).

Filing No. 9-2 at 18.

The government argues that the plaintiff failed to prove his migraines equaled Listing 11.02(B). Further, the government points to the ALJ's use of the 11.02 epilepsy as the most closely analogous listed impairment for headaches. *See Soc. Sec. Ruling, Ssr 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P (S.S.A. Aug. 26, 2019) (S.S.A. Aug. 26, 2019), at *7. Plaintiff, argues the government, has the burden of showing that he meets or equals off of the specified medical criteria of that particular listing. The government argues that plaintiff did not establish that he had migraines that occurred at least once a week for at least 3 consecutive months which would make him presumptively disabled per Listing 11.02(B). Thus, argues the government, there can be no error on the part of the ALJ at Step 3.

With regard to the RFC finding by the ALJ, the government contends that the ALJ determined that plaintiff's migraines tended to improve with the prescribed treatment. In particular, the government points to the ALJ's findings regarding his emergency room visits in January, February, and March of 2022, where the medicine given helped improve his headaches. The government also stated that the ALJ found no evidence that Plaintiff consistently reported frequency and intensity of migraines that would support a finding of greater limitations. *See* Filing No. 9-2 at 25.

Plaintiff contends that the ALJ overemphasized the rare moments when his headaches improved with medication. Further, Plaintiff contends that the ALJ applied the wrong legal standard when she stated that the plaintiff's headaches did not meet Listing 11.02, because there is no listing impairment for headaches. Instead, SSR 19-4 requires that an ALJ must analyze whether a headache equals that listing. Plaintiff contends that he need not show that his headaches met the frequency required of seizures in Listing

14

11.02, but only had to show that his headaches occurred at the frequency necessary to medically equal Listing 11.02. The ALJ then went on to say, "the medical evidence does not indicate that the claimant has experienced seizures at the frequency required to meet listing 11.02." Filing No. 9-2 at 18.  It goes without saying that the Plaintiff is not arguing that he has seizures.

The Court finds that the ALJ erred in finding that the severe headaches do not meet the listing of 11.02.  The ALJ was required to determine whether the frequency was equal to" Listing 11.02, but not the same as 11.02. Further, the ALJ in this regard did not make the required findings regarding her headache disorder.  In fact, Listing 11.02 requires the ALJ to:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02(B), we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of the headache events; adherence to prescribed treatment; side effects of treatment (for example…drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations.).

*Id.* The ALJ ignored these criteria and failed to apply it to the plaintiff's migraine headaches.  Medical records from a visit to the emergency room noted that the Plaintiff develops pain behind his eyes, feels heat in his temples and "sees spots" during a migraine episode. Filing No. 9-7 at 24.  Medical records from the Plaintiff's neurologist show lightheadedness, nausea, visual aura, photophobia and phonophobia associated with his migraine headaches.  Filing No. 10-1 at 54.  Plaintiff's neurologist indicates that plaintiff has intense throbbing pain associated with nausea, photophobia and phonophobia.  These records also state that the Plaintiff sees flashes of light during his

15

migraines. Filing No. 10-6 at 1106. There is simply not substantial evidence on this record to support the conclusions of the ALJ. An ALJ's failure to analyze the appropriately listed impairment is reversable error unless the record otherwise supports the ALJ's overall conclusion. *Brown v. Colvin*, 825 F.3d 936, 940 (8th Cir. 2016).

It appears that Plaintiff has complied with strict treatment regimens to control his migraines. He sees his neurologist and treating doctor regularly. He has tried many medications including Imitrex, Sumatriptan, Amitriptyline, Topomax, and Rizatriptan. In addition, he has received Aimovig injections. Filing No. 10-6 at 27. As a result of taking these medicines, some of them cause nausea, drowsiness, cognitive side effects, and dizziness. Filing No. 9-7 at 469, Filing No. 10-1 at 54 and 62.

The Court finds that the complaints by the plaintiff coupled with the objective evidence in the record support a finding of severe migraines with disabling pain, chronic pain, and debilitating migraines. The ALJ failed to conduct an appropriate analysis in this regard pursuant to § 11.02(B). The Court finds the migraines meet the Listing 11.02(B) for headaches that equal those criteria. The Court determines that Listing 11.02(B) has been satisfied and it was clear error for the ALJ to fail to make the appropriate analysis and to find otherwise. There is no requirement under 11.02 that the plaintiff meet the exact criteria for seizures, as stated by the ALJ, but that Plaintiff's symptoms equal the general requirements of that section.

In addition, the Court finds that the ALJ failed to correctly determine plaintiff's RFC. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own description of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). *See* 20 C.F.R. § 404.1545(a)(2), 416.945(a)(2) ("[w]e will consider

16

all of your medically determinable impairments...including your medically determinable impairments that are not 'severe'...when we assess your residual functional capacity"). The ALJ found that plaintiff's migraine headaches "significantly limit" his ability to perform basic work activities. Filing No. 9-2 at 16. In spite of the evidence, plaintiff's testimony, and the medical record, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant as the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except involving simple work with social interaction not more than occasional with coworkers, supervisors, and the public.

*Id.* at 21.[2] An ALJ is required to support his or her conclusions with references to the record. Although there may have been times when the migraines were better, the record overwhelmingly shows that plaintiff consistently was seen by his treating doctor, his neurologist, and the emergency room for these continuing migraines.

The clear weight of the evidence supports a conclusion that Plaintiff has been disabled since his alleged onset date. Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate. See *Hutsell*, 259 F.3d at 714.

Accordingly,

IT IS ORDERED:

1. Plaintiff's motion for summary judgment, Filing No. 14, is granted.

2. Defendant's motion to affirm, Filing No. 19, is denied.

---

[2] The ALJ then stated: The foregoing medical evidence reasonably supports a finding of some limitation in the claimant's ability to work due to migraines. This impairment has therefore been considered in assessing the residual functional capacity. However, the medical evidence overall does not support the extent of the claimant's disabling allegations because of migraines. For instance, as noted above, the evidence tends to suggest that the claimant's headaches and migraines generally improved with adherence to prescribed medication. The evidence does not indicate that the claimant consistently reported a frequency or intensity of migraines that would support a finding of greater limitations. Examinations often did not reflect the types of abnormalities, including pain behaviors, one would expect given the disabling allegations. Thus, the undersigned finds that while the evidence supports some limitation as a result of migraines, the medical evidence regarding this impairment is not consistent with the extent of the symptoms or limitations alleged. Filing No. 9-2 at 25.

3. This action is remanded with directions to the Commissioner to award benefits to the Plaintiff.

4. A judgment in accordance with this Memorandum Opinion will be entered.

5. The plaintiff shall file any motion for attorney fees within two weeks of the date of this order.

Dated this 12th day of October, 2023.

                                                  BY THE COURT:

                                                  s/ Joseph F. Bataillon
                                                  Senior United States District Judge